Lower Bucks County            :
Joint Municipal Authority,       :
           Appellant      :
                    :
        v.               :
                    :
Raymond W. Dukes and      :   No. 619 C.D. 2019
Kathleen A. Dukes         :   Submitted: November 22, 2019

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: May 6, 2020

      The Lower Bucks County Joint Municipal Authority (Authority) appeals the May 1, 2019 order of the Court of Common Pleas of Bucks County (trial court) denying the Authority's motion for post-trial relief.[1]  Upon review, we affirm.

      The Authority operates a sanitary sewer system for the benefit of residences and businesses in Levittown, which is located in Bucks County, Pennsylvania.[2]  Trial Court Opinion at 1, Reproduced Record (R.R.) at 251a.  This

---

[1] Although dated May 1, 2019, the trial court did not enter this order on the docket until May 6, 2019.

[2] Levitt & Sons, Inc., created the sewer system when building the Levittown community, and the disputed easement provisions are located in the original Levittown deed system dating to 1952.  Trial Court Opinion at 1-2, Reproduced Record (R.R.) at 251a-52a; *see also* Transcript of Testimony (T.T.), 4/26/19 at 9-10, R.R. at 185a-86a.  The easement benefits the Authority as the ultimate successor in interest to Levitt & Sons, Inc.  Trial Court Opinion at 2, R.R. at 252a.

case involves a dispute regarding interpretation of the Authority's sewer line easement, a portion of which exists along the rear of private property owned by Raymond W. Dukes and Kathleen A. Dukes (Landowners). *Id.*

The easement provides, in pertinent part:

15. Perpetual easements for the installation and maintenance of sewer, water and drainage facilities, for the benefit of the adjoining landowners and/or municipality and/or municipal or private utility company ultimately operating such facilities, are reserved as shown on the aforesaid map; also, easements in general over each lot for the installation of electric and telephone facilities.

16. Violation of any covenant or restriction may be remedied by the Company and the expense thereof shall be chargeable to the then owner of the lot and be payable forthwith upon demand. The foregoing shall be alternative or in addition to the enforcement provisions of paragraph 18.
. . . .
18. Enforcement shall be by proceeding at law or in equity, brought by the Company, its successors and assigns, or by the owner of any lot, against any person or persons violating or attempting to violate any covenant, either to restrain violation or to recover damages or both.

Easement Provisions, R.R. at 263a. On January 11, 2016, the Authority filed a complaint against Landowners, asserting that a tree and its root system had caused or would cause blockage in the sewer system, and that such blockage could cause sewage to back up into residential dwellings at or near Landowners' property. Trial Court Opinion at 2, R.R. at 252a; *see also* Complaint at 2-3, ¶ 12, R.R. at 8a-9a. Contending that "the presence of easement violations," such as the tree, impeded its ability to maintain the sanitary sewer system, the Authority requested that the trial

2

court "require [Landowners] to remove the objects and overgrowth on [the Authority's] easement." Complaint at 3, ¶ 15-16, R.R. at 9a.

Landowners failed to respond to the complaint,[3] thereby resulting in a default judgment. Trial Court Opinion at 2, R.R. at 252a. After retaining counsel and successfully petitioning the trial court to open the default judgment, Landowners filed an answer and new matter, asserting that the tree does not, and will not in the immediate or foreseeable future, affect the operation of the Authority's sewer system. *Id.*; Answer and New Matter at 3-4, ¶¶ 22-25, R.R. at 102a. The trial court conducted a bench trial on April 26, 2019,[4] in which Landowners participated *pro se*, as their counsel had withdrawn by permission of the trial court. Trial Court Opinion at 2, R.R. at 252a. The Authority requested a court order directing Landowners to remove obstructions from the Authority's sanitary sewer easement— namely, a large tree, a shed and an above ground pool.[5] Trial Court Opinion at 2-3, R.R. at 252a-53a.

---

[3] Landowners also failed to respond to a "Request for Admissions" from the Authority. *See* R.R. at 264a-66a.

[4] The trial court opinion states that the judge conducted the bench trial on April 25, 2019. *See* Trial Court Opinion at 1, R.R. at 251a. However, the transcript of testimony from the bench trial is dated April 26, 2019. *See* T.T., 4/26/19 at 1, R.R. at 177a.

[5] The Authority did not mention the shed or the swimming pool in either its complaint or its notice of easement violation. *See* Complaint at 1-4, R.R. at 7a-10a; *see also* Notice of Sanitary Sewer Easement Violation at 1-2, R.R. at 15a-16a. At the April 26, 2019 bench trial, the Authority asked the trial court to enter an order directing Landowners to remove not only the tree, but also the shed and the swimming pool. T.T., 4/26/19 at 13-14, R.R. at 189a-90a. Counsel for the Authority stated at the bench trial that an addendum to its complaint contains reference to the shed and the swimming pool. *Id.* at 49. Landowners agreed to remove the shed and the swimming pool at their own expense if a survey to be conducted by the Authority indicated that these structures were located within the easement area. *Id.*

The trial court determined that the Authority was required to demark the easement and remove the tree at its own expense. *See* R.R. at 169a. Noting that the evidence did not establish the exact location of the Authority's easement or what, if any, portion of Landowners' shed or swimming pool lay within the bounds of the easement, the trial court required the Authority to send a surveyor to mark the easement boundary on May 8, 2019. *Id.* Landowners would then have 60 days to remove any man-made obstructions within the area of the easement, such as the shed and the swimming pool. *Id.* The trial court further held that the Authority could remove any other trees, plants or shrubs at its own expense. *Id.*

On April 30, 2019, the Authority filed a motion for post-trial relief, which the trial court denied on May 1, 2019. *See* Motion for Post-Trial Relief at 1, R.R. at 170a. The Authority appealed to this Court on May 20, 2019. *See* Notice of Appeal, R.R. at 236a; *see also* Trial Court Opinion at 1, R.R. at 251a. Following the Authority's filing of a statement of errors complained of on appeal, on July 18, 2019, the trial court filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). The trial court identified "[t]he principal issue before the Commonwealth Court [as] whether [the trial court] made the correct decision in holding the Authority responsible for removal of the tree or other natural (as opposed to man-made) things that allegedly interfered with [the Authority's] sewer line easement, including all expenses and costs."[6] Trial Court Opinion at 4, R.R. at 254a. Thus, the trial court

---

[6] The trial court noted that the Authority's appeal could be considered premature, as no judgment had yet been entered following the April 26, 2019 bench trial. Trial Court's Rule 1925 Opinion at 1, R.R. at 25a. On July 25, 2019, this Court entered an order stating, "it appears that judgment has not been entered on the docket below," and requiring the Authority to file within 14 days a certified copy of docket entries showing that it has caused the trial court to enter judgment in order to avoid dismissal of the appeal as premature. *See* Cmwlth. Ct. Order, 7/25/19. The Authority complied with this order on August 5, 2019.

4

noted that "[t]he real issue in dispute is which party ha[s] the liability or duty of maintenance for the easement." Trial Court Opinion at 7, R.R. at 257a. The trial court determined that the Authority was responsible for maintaining its easement, so long as Landowners did not interfere with its use of the easement. *Id.* The trial court found that "[Landowners] did not interfere with the Authority's use of the easement as . . . they did not plant the tree and did not, with the possible exception of the possible encroachment by the pool and shed, do anything that interfered with the Authority's ability to use the easement area." Trial Court Opinion at 7-8, R.R. at 257a-58a. The trial court noted that the sewer main at issue in the present case is "six to eight feet deep," and that the tree in question is estimated to be "sixty to eighty feet in height." Trial Court Opinion at 5, R.R. at 255a (citing Transcript of Testimony (T.T.), 4/26/19 at 17 & 19, R.R. at 193a & 195a). Based on the testimony of Philip Smythe, a field technician employed by the Authority's engineering department, the trial court "found that the tree in question had the potential to, but did not yet, interfere with the Authority's actual use of their [sic] sewer line." *Id.* Nevertheless, the trial court "did find that its existence was such that future maintenance of the sewer line would be easier if the tree was removed and that removal could prevent roots from eventually growing down to the depth of the sewer line even though they had not done so in decades." *Id.* The trial court noted that Landowners did not object to removal of the tree, but only disputed the Authority's claim that Landowners bear the cost. Trial Court Opinion at 4, R.R. at 254a.

The trial court cited *Berwick Township v. O'Brien*, 148 A.3d 872 (Pa. Cmwlth. 2016), noting that the easement agreement in that case "clearly contemplated that the township's right of access might entail the clearing of vegetation and trees within the right of way." Trial Court Opinion at 8, R.R. at 258a.

5

Despite acknowledging that, unlike the present case, *Berwick* did not involve the question of which party was responsible for removing trees and bearing the cost thereof, the trial court reasoned that the easement agreement's provision for the "maintenance of inspection of sewer lines" in that case permitted the township to remove trees and clear vegetation within its right-of-way. Trial Court Opinion at 8-9, R.R. at 258a-59a. The trial court further noted that it was undisputed in *Berwick* that the cost fell on the party enjoying the easement. *Id.* The trial court therefore reasoned that the easement provisions contested in the present case "manifestly contemplate[] that maintenance of the sewer lines may need to be effected by removal of trees and other naturally occurring vegetation by the Authority." Trial Court Opinion at 10, R.R. at 260a. Thus, the trial court concluded that under both the express language of the easement provisions as well as Pennsylvania caselaw, the Authority bore the responsibility of removing the tree as the party benefitting from the easement. Trial Court Opinion at 11, R.R. at 260a. However, the trial court determined that "[a]ny man-made obstructions to the easement, placed there by [Landowners], need[ed] to be removed by them at their expense." *Id.* The trial court further found that the language of the easement provision at issue was "clearly unambiguous," as "it affords the Authority [the] right to install and maintain [its] facilities." Trial Court Opinion at 10, R.R. at 260a (internal quotation marks omitted). The Authority appealed to this Court.

Before this Court, the Authority contends that as the owner of the easement, "it is entitled to protect [the] same against intrusion from beyond its confines." Authority's Brief at 19-20. The Authority asserts that vegetation, such as the tree, can intrude and potentially infiltrate and block the sewer main. *See id.* at 20. The Authority asserts that tree roots seek out potential nutrients from sewer

6

systems, and that growth of the roots may affect not just Landowners' home, but also all residents upstream. *Id.* at 22. The Authority asserts that the language of the easement does not burden it with the cost of abating intruding vegetation. *Id.* at 20. Rather, the Authority maintains that "the obligation to address the encroachment falls upon the party whose vegetation is encroaching upon the easement." *Id.* The Authority contends that implicit in its right to peaceful enjoyment of the easement is the right not to have the property encroached upon by growth from adjoining properties, as well as the right not to incur costs to protect the sewer main from those incursions. *Id.* at 22.

The Authority cites *Jones v. Wagner*, 624 A.2d 166 (Pa. Super. 1993) for support, a case in which the Superior Court held that a landowner was entitled to exercise self-help in order to remedy a technical trespass by trimming branches protruding from a neighbor's tree to the extent they hung over the property line. Authority's Brief at 23 (citing *Jones*, 624 A.2d at 167-69). The Authority further noted that, in *Jones*, the landowner exercising self-help was not required to demonstrate physical harm and that it could recoup expenses from the trespasser. *Id.* at 24-25 (citing *Jones*, 624 A.2d at 171).[7]

Further, the Authority maintains that Pennsylvania law does not support the trial court's distinction between the duty to abate man-made encroachments upon easements as opposed to those of natural origin. *Id.* at 26. The Authority also contends that the trial court erred in relying upon *Berwick*, as that case is factually distinguishable. *Id.* at 27. The Authority further asserts that the trial court erred in

---

[7] We note that *Jones* is inapposite, as it dealt with a landowner's ability to exercise self-help to remedy a technical trespass, as opposed to allocation of the duty to maintain an easement. *See Jones*, 624 A.2d at 105.

determining that the tree did not constitute an encroachment upon its easement, because Landowners did not plant the tree. *Id.* at 28.

Landowners, proceeding *pro se*, counter that the roots of the tree in question would not interfere with the sewer system unless one of the system's pipes leaked. Landowners' Brief at 1. Landowners further point out that in the 28 years since purchasing their home, the Authority had not previously claimed that Landowners could not permit a tree to grow on the easement. *Id.* at 2.

The question *sub judice* is whether the disputed easement language obligates the Authority or Landowners to remove the tree in question and to bear the cost thereof. "It is well established that the same rules of construction that apply to contracts are applicable in the construction of easement grants."[8] *Zettlemoyer v. Transcon. Gas Pipeline Corp.*, 657 A.2d 920, 924 (Pa. 1995); *see also Starling v. Lake Meade Prop. Owners Ass'n, Inc.*, 162 A.3d 327, 341 (Pa. 2017) (stating that "[t]he same principles that apply to the interpretation of a contract apply to the interpretation of a deed"). "When interpreting a contract, the court's paramount goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." *Halpin v. LaSalle Univ.*, 639 A.2d 37, 39 (Pa. Super. 1994). "The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.*

---

[8] "Whether a trial court properly interpreted a contract is a question of law and . . . [the appellate] [c]ourt's scope of review is plenary. . . . We need not defer to the conclusions of the trial court and are free to draw our own inferences." *Liddle v. Scholze*, 768 A.2d 1183, 1185 (Pa. Super. 2001).

8

Here, the contested easement language grants the Authority "[p]erpetual easements for the installation and *maintenance* of sewer, water and drainage facilities, for the benefit of the adjoining landowners and/or municipality and/or municipal or private utility company ultimately operating such facilities[.]" Easement Provisions, R.R. at 263a (emphasis added). We conclude that this language is not ambiguous, as it clearly grants the Authority an easement for the purpose of maintaining its sewer system, and such a provision is not "capable of being understood in more than one sense." *See Hutchison*, 519 A.2d at 390. "As a general rule, in the absence of an agreement to the contrary, the owner of the land subject to an easement of a nature that requires the maintenance of means for its enjoyment is not bound to keep such means in repair or to sustain any expense in maintaining them in a proper condition." *Frable v. Schoenberger*, 40 Pa. D. & C. 2d 655, 660 (1966); *see also Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 674 (Pa. 2005) (acknowledging that "an owner of an easement is generally considered a possessor of property and is required to maintain its easement" and also "any equipment within it").[9] Removing a tree from an easement is a maintenance issue. *See, e.g.*, *Berwick*, 148 A.3d at 887 (noting that the township had the right to

---

[9] Pennsylvania is consistent in this regard with settled law across various jurisdictions. *See* 425 AM. JUR. 2D *Easements and Licenses* § 72 Westlaw (database updated February 2020) (recognizing that, "[w]hether by agreement or a common-law right or duty, the owner of an easement must keep it in repair," and "[t]he owner of the servient tenement ordinarily is under no duty to maintain or repair it, in the absence of an agreement imposing such a duty"); *see also* 25 AM. JUR. 2D *Easements and Licenses* § 73 (database updated February 2020) (stating, "[i]n order that the owner of an easement may perform the duty of keeping it in repair, he or she has the right to enter the servient estate at all reasonable times to effect necessary repairs and maintenance"); 27 AM. JUR. 2D *Energy and Power Sources* § 166 (database updated February 2020) (noting that "[t]he terms of a private grant of an easement to maintain [a public utility] may expressly or impliedly include a right to trim or remove trees, shrubs, or other vegetation to prevent interference with [its operation]" and that "easements may give a gas pipeline corporation the right to remove trees growing above its gas pipeline when they endanger or interfere with the construction, operation, or maintenance of the pipeline").

clear vegetation and trees from the easement area as part of its ability to inspect and maintain its sewer lines under the terms of the easement agreement); *Duquesne Light Co. v. Longue Vue Club*, 63 A.3d 270 (Pa. Super. 2013) (involving an easement agreement which provided that an electric utility's ability to maintain its easement entailed the "right to trim or remove any trees, shrubbery or obstructions which . . . [the electric utility] may deem necessary to prevent interference or threatened interference with the . . . maintenance . . . of [its] transmission system). Thus, the Authority's contention that Landowners must remove the tree at their own expense lacks support.

However, we agree with the Authority that the trial court overstated the extent to which *Berwick* lends support. The easement agreement in *Berwick* delineated in detail the township's right to remove trees from within the easement area for the purpose of maintaining sewer lines and its corresponding duty to compensate landowners, *see Berwick*, 148 A.3d at 884-86, whereas the easement provisions at issue here broadly grant the Authority an easement for the installation and maintenance of its sewer system, *see* Easement Provisions, ¶ 15, R.R. at 263a. Nevertheless, that *Berwick* involved a more detailed easement agreement does not indicate that the trial court reached the wrong result. The easement agreement in *Berwick* merely memorialized the general rule that landowners should not bear the cost of maintaining the easement area. *See Frable*, 40 Pa. D. & C. 2d at 660. Simply put, the Authority, as easement holder, is responsible for maintaining its sewer system by removing the tree at its own expense where the provisions governing its easement do not shift this burden to Landowners.

We note that the Authority's brief seems to suggest that the tree is located outside of the easement area in Landowners' backyard and that the roots are

10

growing toward the easement area. The Authority's suggestion is belied by the record herein. The Authority's second request for admission, which it alleges was deemed admitted, states that "[t]he tree . . . is located and growing within the 10-foot[-]wide sewer easement . . . ." R.R. at 161a; *see also* Authority's Brief at 9. Additionally, Smythe, the Authority's field technician, when asked how he knows that the tree is in the easement, testified at the bench trial that he "measured the easement based on the original plot plan." T.T., 4/26/19 at 23, R.R. at 199a. Smythe also identified three photos he had taken of Landowners' backyard, which were admitted without objection, and are labeled as "79 Tall Pine Lane – Above ground pool, trees and shed atop public sewer main." R.R. at 166a-68a; *see also* T.T., 4/26/19 at 15, R.R. at 191a. Further, counsel for the Authority noted before the trial court that the tree was "on the sewer easement." T.T., 4/26/19 at 46, R.R. at 222a.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Bucks County    :
Joint Municipal Authority,   :
      Appellant  :
          :
    v.     :
          :
Raymond W. Dukes and   :  No. 619 C.D. 2019
Kathleen A. Dukes    :

O R D E R

AND NOW, this 6th day of May, 2020, the May 1, 2019 order of the Court of Common Pleas of Bucks County denying the Lower Bucks County Joint Municipal Authority's request for post-trial relief is hereby AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge