# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Berwick Township | : | |
| | : | |
| v. | : | No. 461 C.D. 2016 |
| | : | Argued: September 15, 2016 |
| Robert F. O'Brien, Linda A. O'Brien, | : | |
| Robert F. O'Brien, Jr., and Lydia A. | : | |
| O'Brien, | : | |
| Appellants | : | |

BEFORE:  HONORABLE ROBERT SIMPSON, Judge
HONORABLE JULIA K. HEARTHWAY, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**                 **FILED: October 12, 2016**

In this appeal, Landowners[1] ask whether the Court of Common Pleas of Adams County[2] (trial court) erred in granting summary judgment in favor of Berwick Township (Township) in the Township's suit seeking declaratory and injunctive relief with regard to its right to access a right-of-way it previously obtained for sewer lines that run across Landowners' property pursuant to a Right-of-Way Agreement (Agreement) between the parties. Landowners raise several issues. Upon review, we affirm.

---

[1] Landowners are Robert F. O'Brien, Linda A. O'Brien, Robert F. O'Brien, Jr. and Lydia A. O'Brien.

[2] The Honorable Michael A. George, P.J., presided.

# I. Background

The trial court set forth the following background to this matter. At the center of this dispute is the interpretation of the Agreement entered into by Landowners and the Township.

Landowners own real property in the Township. The Township owns and operates a public sanitary sewer system serving its residents. The system is operated pursuant to a permit issued by the Pennsylvania Department of Environmental Protection (DEP).

In March 2001, the Township and Landowners entered into the Agreement, which permits the construction, operation, inspection, maintenance and replacement of sewage lines and sewage facilities across a portion of Landowners' property. Landowners received compensation of $11,022 in exchange for the grant of the right-of-way.

Pursuant to the terms of the Agreement, on October 22, 2013, the Township provided Landowners a six-month notice of its intent to clear obstructions within the right-of-way boundaries. On March 13, 2014, the Township gave Landowners additional notice that it wished to schedule a date to clear brush from the right-of-way. This correspondence was met by correspondence from Landowners' counsel threatening the initiation of criminal prosecution and a civil suit in the event the Township's employees entered the right-of-way and damaged any trees, vegetation or other property within the right-of-way. Additionally, Landowners erected a fence across the width of the right-of-way at a location where it was accessible from a public roadway.

Thereafter, the Township filed suit seeking declaratory and injunctive relief as to its rights under the Agreement. Specifically, the Township sought an order: (1) enjoining Landowners from interfering with the Township's exercise of its rights under the Agreement; (2) prohibiting Landowners from denying the Township access to Landowners' property for the purpose of maintaining and inspecting the line; (3) entering declaratory judgment to permit the Township to clear brush and overgrowth (including trees) in accordance with the terms of the Agreement; and, (4) directing Landowners to remove a section of the fence they erected in order to allow the Township to access the right-of-way. Photographs attached to the Township's complaint depict significant brush and overgrowth as well as small trees within the Township's right-of-way. Reproduced Record (R.R.) at 24a-29a.

Landowners filed an answer and new matter. The Township then filed a reply to the new matter. The parties conducted discovery.

The trial court subsequently held a pre-trial conference and scheduled a non-jury trial. A few months before the scheduled trial date, the Township filed a motion for summary judgment, and Landowners filed an answer. After briefing, the trial court entered an order granting, in part, the Township's motion for summary judgment.

In particular, the trial court: (1) permanently enjoined Landowners from interfering with the exercise of the property rights authorized to the Township by the Agreement; (2) enjoined Landowners from taking any action that prohibits

3

the Township access to the property for purposes of inspecting and maintaining sewage lines within the easement; and, (3) declared the easement and right-of-way permitted the Township to remove brush and overgrowth, including trees, as necessary to permit the Township access for the purposes set forth in the Agreement. Thus, the trial court indicated the area within the easement could be clear cut to the extent necessary consistent with customary industry practices to permit access by Township officials and equipment to perform reasonable inspection.

However, the trial court denied the Township's request to order removal of the fence because the terms of the Agreement permitted the erection of pasture fences within the right-of-way. See Agreement at ¶3(D); R.R. at 15a. The trial court explained that pursuant to paragraph 2 of the Agreement, the Township could temporarily remove the fence for the purposes set forth in the Agreement, provided that the fence was restored to the extent reasonably possible under the circumstances. The trial court also noted the Agreement permitted the removal of trees within the right-of-way for the purposes of exercising the rights granted by the Agreement.

Finally, the trial court refrained from issuing any additional ruling on the ground that advisory opinions based on assertions of hypothetical events were improper. Phila. Entm't & Dev. Partners, L.P. v. City of Phila., 937 A.2d 385 (Pa. 2007). The trial court also explained, if the Township's actions exceeded the rights set forth in the Agreement, Landowners could pursue actions for monetary damages. However, the trial court reiterated that Landowners were enjoined from

4

taking any action prohibiting or interfering with the Township's right to access the property including, the right to remove overgrowth, shrubbery and trees within the right-of-way for the purposes of exercising its rights under the Agreement.

Landowners appealed to the Superior Court, which transferred the appeal to this Court on the ground that this appeal involved the Township's action for enforcement of a right-of-way and easement, and this Court possessed greater expertise regarding the issues raised.

The trial court directed Landowners to file a concise statement of the errors on appeal pursuant to Pa. R.A.P. 1925(b), which they did. The trial court then issued an opinion pursuant to Pa. R.A.P. 1925(a) in which it stated that Landowners raised a number of alleged errors, some of which could be addressed summarily. For example, Landowners claimed the trial court erred in granting summary judgment because a factual dispute precluded the entry of summary judgment. In support, the trial court stated, Landowners set forth an unsupported, broad boilerplate claim that "genuine issues of material fact" existed. As the trial court was unable to meaningfully address such a broad claim, it deemed it waived. See Commonwealth v. Lemon, 804 A.2d 34 (Pa. Super. 2002).

In addition to the broad claim of the existence of a material factual dispute, the trial court explained, Landowners also cited specific examples of such a dispute. They argued there was a genuine issue of material fact as to whether "routine mowing" was permitted under the Agreement and whether "video inspection" of the sewage line minimized damages in accordance with the

5

Agreement. Tr. Ct., Slip Op., 11/23/15 at 3. Regardless of how Landowners framed this issue, the trial court responded, the issue before it was one of contract interpretation and did not involve development of an extensive factual background.

Specifically, the trial court stated, whether routine mowing was permitted under the Agreement did not involve a factual issue as to the meaning of "routine mowing," but rather an issue of contract interpretation regarding whether the Agreement permitted routine mowing. Id. Similarly, the trial court stated, there was not great factual dispute as to whether "video inspection" was less intrusive or feasible than other methods of line inspection. Id. Rather, the issue was whether a right to inspect existed, and, if so, whether that right was limited by the terms of the Agreement. The trial court explained that the latter concerns were clearly issues of contract interpretation and did not give rise to a factual dispute.

The trial court noted Landowners also claimed the injunction was not narrowly tailored to protect against the harm alleged. The trial court responded this claim mischaracterized both the issue before it and the nature of the relief granted. To that end, the Township's complaint sought to enforce its clearly defined rights under the Agreement and to enjoin Landowners from interfering with those rights. The trial court's order enjoined Landowners from interfering with the exercise of the Township's rights under the Agreement, including the right to enter the property to inspect and maintain sewer lines within the easement. The trial court stated it could not understand Landowners' exact complaint as it related to this issue as the trial court's order declared the terms of the Agreement to be enforceable and enjoined Landowners from interfering with those terms.

6

Moreover, to provide general guidance, the trial court indicated the language of the Agreement would be interpreted under customary understanding in the industry.

In addition, the trial court explained, Landowners also asserted the trial court erred in ruling on this action because it did not involve an "actual controversy." The trial court stated this issue was meritless. Unquestionably, the Declaratory Judgments Act[3] (DJA) requires a party to show an actual controversy exists. Cnty. Comm'rs. Assn. of Pa. v. Dinges, 935 A.2d 926 (Pa. Cmwlth. 2007) (en banc). In the context of a declaratory judgment action, an actual controversy is defined as a dispute indicating imminent and inevitable litigation and a direct, substantial, and present interest. Id.

Here, the trial court stated, the Township's notice to Landowners of its intent to exercise its legal rights under the Agreement prompted a threatening response of potential criminal prosecution and civil litigation. Additionally, a physical barrier was erected within the right-of-way boundaries. As a result, the trial court stated, Township officials were faced with the Hobson's choice of abandoning their rights under the Agreement or exercising those rights at the risk of being subject to criminal prosecution. This gave the Township a direct and substantial interest in a determination of its rights so as to avoid future imminent and inevitable litigation.

---

[3] 42 Pa. C.S. §§7531-7541.

7

The trial court also noted that Landowners argued the trial court erred in denying their request for a jury trial. The trial court deemed this claim moot because it entered summary judgment.

Finally, the trial court stated, Landowners claimed the trial court's order effectively changed or nullified material terms of the Agreement. The trial court responded that this claim was based on a distorted interpretation of its order. To that end, after reviewing the Agreement, the trial court interpreted it to grant the Township access to Landowners' property for the purpose of inspecting and maintaining sewage lines within the easement. It further interpreted the Agreement to permit the Township to remove brush and overgrowth, including trees, as necessary for the Township to exercise its access for purpose of inspection and maintenance. These rights were clearly granted to the Township in paragraphs 2(D) and (F) of the Agreement. In order to give the parties some guidance so as to avoid unnecessary future litigation, the trial court stated, its order explained that customary industry practices would aid in determining whether the Township utilized "reasonable means" in exercising its rights under the Agreement. Contrary to Landowners' claim, its order did not reform or add terms to the Agreement. Tr. Ct., Slip Op. at 6.

Additionally, contrary to Landowners' claims, the trial court stated, its order did not *limit* Landowners to a single remedy of a suit for monetary damages in the event the Township exceeded its rights under the Agreement. To the contrary, a reading of the order as a whole indicated an acknowledgment that Landowners had the *ability* to seek monetary damages for injury caused by the

Township's actions should such injury contrary to the Agreement ever occur. The trial court explained this claim was an example of Landowners' effort to have the trial court specifically identify every acceptable and unacceptable action under the Agreement in the context of what may possibly happen. The trial court responded that it properly refused Landowners' invitation to do so. See Phila. Enm't & Dev. Partners.

This matter is now before us for disposition.

## II. Issues

On appeal,[4] Landowners assert the trial court erred in: (1) not limiting the scope of its order in this declaratory judgment action to ruling on the "actual controversies" regarding routine mowing and video inspections that existed between the parties; (2) granting the Township summary judgment where genuine issues of material fact existed as to whether routine mowing was permitted, and whether the Township's proposed video inspection was necessary and minimized damages in accordance with the Agreement; (3) granting broad injunctive relief with respect to future actions to be taken by the Township where genuine issues of material fact existed as to whether the prerequisites for an injunction were

---

[4] Our review of a trial court order granting summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion. Kuniskas v. Commonwealth, 977 A.2d 602 (Pa. Cmwlth. 2009). When reviewing a trial court's grant of summary judgment, we must examine the record in a light most favorable to the non-moving party, accepting as true all well-pled facts and reasonable inferences to be drawn from those facts. Id.

In addition, when reviewing the grant or denial of a permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law. Buffalo Twp. v. Jones, 813 A.2d 659 (Pa. 2002).

9

established, and without any factual record to establish whether unknown future actions were permitted by the Agreement; and, (4) issuing an order that reformed the Agreement to allow clear cutting based on industry standards (as opposed to being required to show trees interfere with a permitted use and choosing a method that minimizes damages to trees and other property), and to limit Landowners' permitted remedy to suing for monetary damages.

## III. Discussion
### A. Scope of Trial Court's Order; "Actual Controversies"
#### 1. Contentions

Landowners first argue the trial court erred by not limiting the scope of its order to ruling on the "actual controversies" regarding routine mowing and video inspections that exist between the parties. They assert the trial court did not specifically address the "actual controversies" regarding whether the Agreement allows for the routine mowing of trees and vegetation, and whether a video inspection is necessary or is a method that minimizes damage to property. Instead, Landowners contend, the trial court granted the Township's request for broad injunctive relief as to any future actions taken by the Township in the right-of-way. For future events that have not occurred, Landowners maintain, there is obviously no factual record or evidence on which to base and justify such broad injunctive relief within the framework of a declaratory judgment action. Therefore, Landowners argue, declaratory relief should be narrowly tailored to address the actual controversies shown on the record.

Prior to the Township filing its complaint, Landowners assert, the record shows an actual controversy existed between the parties only as to whether

10

the Township could engage in "routine mowing" of trees and vegetation as a permitted purpose within the right-of-way. Appellants' Br. at 17. In that regard, the parties exchanged nine letters before the Township filed suit; these letters contained no reference by the Township of its intent to perform a video inspection or clean the sewer lines. See Aff. of Robert F. O'Brien, Sr., at ¶¶2-13; Reproduced Record (R.R.) at 191a-99a, 202a-213a; Dep. of Robert Foltz, Jr., 3/11/15, at 37-38, 114; R.R. 289a-90a, 366a, Ex. 2; R.R. at 382a-393a; see also Br. of Defs. in Opp. to Mot. for Summ. J. of Pl. at 5-9, 17-18; R.R. at 411a-15a, 423a-24a.

Landowners contend the Township then raised for the first time in its complaint a new purpose to justify clearing trees and vegetation from the right-of-way: a video inspection of the sewer system. See Foltz Dep. at 37-38, 114; R.R. at 289a-290a, 366a, Ex. 2; R.R. at 382a-393a. In light of the deposition testimony of Robert Foltz (a Township Supervisor and Sewer Plant Manager), and other record evidence discussed below, Landowners assert, there is also an actual controversy as to whether a video inspection or a less destructive method to minimize damage to trees and vegetation is required under the Agreement.

Landowners maintain the trial court's opinion acknowledged their position that there are issues regarding whether the routine mowing and video inspection proposed by the Township are permitted under the Agreement. See Tr. Ct., Slip Op., at 3-4. However, the trial court claimed these issues could be resolved simply by contract interpretation and "[did] not create a factual dispute." Id. at 4. Landowners contend the trial court's position was that the only issues to be decided were whether there was a valid Agreement and whether its terms

11

provided the Township with a right to inspect and maintain the sewer system. They argue the validity and enforceability of the Agreement was not an actual controversy at issue. To that end, they never claimed the Agreement was invalid. Rather, they relied on the Agreement's validity and asked that the Township comply with it.

Contrary to the trial court's position, Landowners assert, the two actual controversies create factual disputes for trial and cannot be resolved by summary judgment. Landowners argue the Township has the burden to show routine mowing and video inspection are permitted under the Agreement. They contend the trial court did not provide any analysis or factual basis in its order to support a finding that the Township should be allowed to routinely mow the right-of-way, perform a video inspection, or be granted a broad injunction. Instead, the trial court simply issued an order that stated the Agreement's terms are valid and enforceable, and Landowners cannot interfere with the Township's exercise of any of its rights under the Agreement.

As to the actual controversy involving routine mowing, Landowners maintain, having a right to inspect and maintain the sewer does not mean the Township established the Agreement allows it to routinely mow down trees and vegetation. They contend that allowing "routine mowing" of the right-of-way would also nullify Paragraph 4(D) of the Agreement because no trees could ever grow naturally. Likewise, Landowners argue, the Township did not establish it complied with paragraph 2(F) of the Agreement's requirement that it choose a method that minimizes damage to trees and property. Instead, the Township chose

12

the most destructive method of inspection under the circumstances: a video inspection with clear cutting of the right-of-way.

Landowners maintain the trial court's failure to address the actual controversies, and the issuance of its broad injunction, allow the Township to choose methods that maximize destruction of trees and other vegetation. Allowing Landowners to sue for money damages after clear cutting will not restore mature trees.

## 2. Analysis
### a. Generally

Petitions for declaratory judgments are governed by the provisions of the DJA. The granting of a petition for declaratory judgment under the DJA is a matter lying within the sound discretion of a court of original jurisdiction. Gmerek v. State Ethics Comm'n, 751 A.2d 1241 (Pa. Cmwlth. 2000), aff'd, 807 A.2d 812 (Pa. 2002). The DJA is remedial. 42 Pa. C.S. §7541(a). Its purpose is to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered. Id. A petitioner whose rights, status, or other legal relations are affected by a written contract may have determined any question of construction arising under that contract and obtain a declaration of rights, status, or other legal relations. 42 Pa. C.S. §7533; Pa. Chiropractic Fed'n v. Foster, 583 A.2d 844 (Pa. Cmwlth. 1990). Under the DJA, "[a] contract may be construed either before or after there has been a breach thereof." 42 Pa. C.S. §7534.

Declaratory judgment is not appropriate to determine rights in anticipation of events that may never occur. Silo v. Ridge, 728 A.2d 394 (Pa. Cmwlth. 1999). It is appropriate, however, where there is imminent and inevitable litigation. Id. Thus, an action brought under the DJA must allege an interest by a party seeking relief that is direct, substantial and present and must show the existence of an actual controversy related to the invasion or a threatened invasion of one's legal rights. Bd. of Comm'rs of Bedford Cnty. v. Ling, 92 A.3d 112 (Pa. Cmwlth. 2014).

Further, "the subject matter of the dispute giving rise to a request for declaratory relief need not have erupted into a full-fledged battle ...." Ronald H. Clark, Inc. v. Twp. of Hamilton, 562 A.2d 965, 968 (Pa. Cmwlth. 1989).

> [O]ur Supreme Court has said:
>
> 'If differences between the parties concerned, as to their legal rights, have reached the state of antagonistic claims, which are being actively pressed on one side and opposed on the other, an actual controversy appears; where, however, the claims of the several parties in interest, while not having reached the active stage, are nevertheless present, and indicative of threatened litigation in the immediate future, which seems unavoidable, the ripening seeds of a controversy appear.'

Pa. Game Comm'n v. Seneca Res. Co., 84 A.3d 1098, 1103-04 (Pa. Cmwlth. 2014) (quoting Mid-Centre Cnty. Auth. v. Boggs Twp., 384 A.2d 1008, 1011 (Pa. Cmwlth. 1978)) (quoting Lakeland Joint Sch. Dist. Auth. v. Scott Twp. Sch. Dist., 200 A.2d 748, 751 (Pa. 1964)).

14

## b. Alleged Overbreadth

Here, Landowners assert the trial court's grant of declaratory relief was overly broad. More particularly, they argue the trial court erred in failing to limit the scope of its decision to what they deem the two actual controversies in this case: the Township's right to perform routine mowing of the right-of-way and to conduct a video inspection of the sewer lines. As the trial court aptly recognized, "[t]his claim mischaracterizes both the issue before the [trial] [c]ourt and the nature of the relief granted." Tr. Ct., Slip Op., at 4.

The Township gave Landowners the required *six-month notice* of its intent to clear obstructions within the right-of-way. What happened next is important to our analysis. In response to the six-month notice, Landowners responded with correspondence threatening to contact law enforcement (and copying the Pennsylvania State Police) as well as threatening to initiate a civil suit if Township officials entered the right-of-way and damaged trees or vegetation. R.R. at 62a-63a. They also erected a fence across the width of the right-of-way at a location where it was accessible from a public roadway.

In our view, Landowners' threats and acts materially propelled the dispute to a new level. The threats and acts became the focus of the current litigation. For this reason, we discern no error in the trial court's refusal to limit its focus to the pre-threat disputes, as urged by Landowners.

In response to Landowners' threats and acts, the Township filed suit seeking an order, which, in relevant part: (1) "[p]reliminarily and permanently enjoin[ed] [Landowners] from interfering in any way with the exercise of the

15

property rights authorized by the [Agreement]"; (2) "[p]rohibit[ed] [Landowners] from denying [the Township] access to the property for the purpose of inspecting and maintaining the line"; and, (3) "[e]nter[ed] judgment declaring the [Agreement] permits [the Township] to clear brush and overgrowth (including trees) in accordance with the terms thereof." R.R. at 11a.

In turn, the trial court's order granting summary judgment in favor of the Township states, as pertinent:

> 1. [Landowners] are permanently enjoined from interfering with the exercise of the property rights authorized to [the Township] by the [Agreement];
>
> 2. [Landowners] are enjoined from taking any action which prohibits [the Township] access to the property for purposes of inspecting and maintaining sewage lines within the easement; [and,]
>
> 3. The easement and right-of-way at issue permits the [Township] to remove brush and overgrowth including trees as necessary to permit [the Township] access for purposes set forth in the [Agreement]. By way of further clarification, the area within the easement may be clear cut to the extent necessary consistent with customary industry practices in order to permit access by Township officials and equipment to perform reasonable inspection[.]
>
> &#42; &#42; &#42; &#42;
>
> It is noted the [Agreement] permits the removal of any trees within the right-of-way for the purposes of exercise of the rights granted by the [Agreement].
>
> The Court refrains from any additional ruling at this time as advisory opinions based on assertions of hypothetical events are improper. If the [Township's] actions exceed [the] rights set forth in the [Agreement], [Landowners] may pursue actions

16

for monetary damages. However … [Landowners] are enjoined from taking any action prohibiting or interfering with [the Township's] right to access the property including the right to remove overgrowth, shrubbery, and trees within the right-of-way for purposes of exercising their rights under the [A]greement. …

Tr. Ct. Order, 8/31/15, at 1-2 (citation omitted).

Thus, based on our review of the relief sought by the Township, and granted by the trial court, there is no indication that the trial court's order was overly broad here. To the contrary, the trial court's order was arguably sufficient to establish a defense to criminal trespass prosecution, see 18 Pa. C.S. §3503(c), and to establish a privilege to enter upon the right-of-way, which would be relevant to a prospective civil action. Further, the trial court's order set forth a resolution of the new fence problem: the fence may be temporarily removed to allow access to the right-of-way, provided it is restored to the extent reasonably possible under the circumstances. Tr. Ct. Order at 2. The trial court refrained from additional rulings. Id.

### c. Interpretation of Express Easement

As the trial court recognized, this case centers on an interpretation of the Agreement, which sets forth the parties' rights with regard to the right-of-way. A right-of-way is an easement, which may be created by an express grant. Amerikohl Mining Co., Inc. v. Peoples Natural Gas, 860 A.2d 547 (Pa. Super. 2004) (citing Merrill v. Mfrs. Light & Heat Co., 185 A.2d 573, 575 (Pa. 1962)). The same rules of construction that apply to contracts apply in the construction of easement grants. Zettlemoyer v. Transcon. Gas Pipeline Corp., 657 A.2d 920 (Pa.

17

1995).  The law on the interpretation of easements is clear.  "To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument.  Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made."  Amerikohl Mining, 860 A.2d at 550 (quoting Merrill, 185 A.2d at 575).

Ambiguous words are construed in favor of the grantee.  Amerikohl Mining.  "Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances."  Id. (quoting Merrill, 185 A.2d at 576).  Further,

> [w]here the grant of an easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted.  Taylor v. Heffner, [58 A.2d 450, 453 (Pa. 1948)]; Hammond v. Hammond, [101 A. 855, 856 (Pa. 1917)]. … Thus, our cases tell us that when the grant of an easement is ambiguous we must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant and within the intention of the original parties to the grant.

> For example, in Lease [v. Doll, 403 A.2d 558 (Pa. 1979)], the deed expressly granted the grantee a right-of-way over the grantor's land to reach the grantee's property from a public roadway.  The successor grantee prepared the right-of-way for vehicular use.  The successor grantor constructed a fence which limited the right-of-way to a footpath.  When the successor grantee sued, the successor grantor argued that the original owner of the property did not own an automobile and,

18

accordingly, the right of way was limited to pedestrian use. We noted the 'general legal principle that an express easement granted in general terms must be construed to include any reasonable use ....' Lease, [403 A.2d at 563] (citations omitted). We found that the unambiguous language of the grant established its purpose as providing an outlet to the main road. [Id. at 562]. We ultimately held that the successor grantee's contemplated use of the easement for vehicular travel 'reasonably fulfill[s] [the easement's] specific purpose, namely that the easement is to serve as an outlet from [the grantee's] land to the public road ....'' [Id. at 564]. …

Zettlemoyer, 657 A.2d at 924 (emphasis added); see also Taylor, 58 A.2d at 453 (quoting Hammond, 101 A. at 856) ("A grant [of an easement] is to be construed in favor of the grantee, and include whatever is reasonably necessary to an enjoyment of the thing granted[.]").   As a result, "[w]here the terms of an express grant of an easement are general, ambiguous, and not defined by reference to the circumstances known to the parties at the time of the grant, the easement is to be construed in favor of the grantee, and the easement may be used in any manner that is reasonable." Columbia Gas Transmission Corp. v. Savage, 863 F. Supp. 198, 201 (M.D. Pa. 1994) (citing Zettlemoyer) (emphasis added); see also Lease.

Here, the Agreement contains the following relevant provisions:

1. **DEFINITIONS**: The term 'sewer lines' when used in this instrument shall refer to a sanitary sewer pipe, conduit, manhole, drain, marker, service connection and other appurtenances to be constructed by the Township, meeting the specifications of the Township Engineer, as approved by the Township, for use in the aforesaid sewer system within the sanitary sewer right-of-way on Owner's property, as shown on the right-of-way plan prepared by William F. Hill & Associates, Inc., marked Exhibit 'A', attached hereto and made a part hereof, and as further limited and clarified by the description in Paragraph 2 of this Agreement.

19

2. **GRANT TO TOWNSHIP:**

A. The Owner hereby gives and grants to the Township an easement and right-of-way across a strip of Owner's aforesaid land which is described as follows:

1. The easement and right-of-way shall be no more than 20 feet wide with the final location to be ten (10) feet on either side of the center of the sewer pipe and with a lesser total width as shown for sewer lines running parallel beside or on Bair Road, as shown on Exhibit 'A' and further limited and clarified by the additional terms as set forth in Paragraph 2.

2. The easement and right-of-way shall be no more than 3,674 feet in total length …

\* \* \* \*

D. The easement, right-of-way, rights, and privileges herein granted shall be used to install, construct, reconstruct, replace, remove, enlarge, <u>inspect</u>, operate, repair, make connections with, and <u>maintain</u> such sewer lines, their accessories and appurtenances, <u>as the Township may from time to time require</u>, consisting of underground pipes, conduits, manholes, drains, markers, mains, service connections, and other appurtenances <u>upon, over, and under the aforesaid easement and right-of-way</u>.

\* \* \* \*

F. To have and to hold the same perpetually to the Township and its successors and assigns, together with <u>the right and privilege at any and all times to enter the said easement and right-of-way, or any part thereof, provided that the Township gives to the Owner reasonable advance notification of the nature of any intended work on the easement and right-of-way and the expected duration of such work,</u> for the purpose of installing, constructing, reconstructing, replacing, removing, enlarging, <u>inspecting</u>, operating, repairing, <u>maintaining</u>, and/or making connections with the sewer

20

lines or other appropriate means of access to the sewer lines; all upon the condition that the Township will at all times during the construction, reconstruction, replacement, removal, repair or maintenance of the sewer lines cause every reasonable means to be used to protect from injury or damage all property, including lawns, trees, shrubbery, fences, buildings, walls, roads, water courses, natural features, or any existing improvement thereto, and will at all times after doing any work in connection with the construction, reconstruction, replacement, removal, repair or maintenance of the sewer lines, cause the said premises to be restored to the condition in which the same were found before such work was undertaken, including replacement and/or repair of damaged property (except trees in the wooded portions of Owner's property within the permanent right-of-way) to the extent reasonably possible under the circumstances and consistent with the rights and privileges herein granted, and for any destroyed or damaged property or other loss which cannot or is not replaced or restored to the same condition to the extent reasonably possible under the circumstances and consistent with the rights and privileges herein granted, pay reasonable compensation therefore.

\* \* \* \*

## 3. **COVENANTS OF THE OWNER:**

\* \* \* \*

D. The Owner does hereby covenant that no structure or other obstruction shall be erected or permitted on the aforesaid strip of land, with the express exception that pasture fences may be erected and are permitted on the Township's right-of-way, so long as no post is placed directly above the sewer line itself.

\* \* \* \*

## 4. **COVENANTS OF THE TOWNSHIP:**

\* \* \* \*

21

A. In addition to any other compensation or covenants by the Township referenced in this Agreement, and as part of the material consideration for Owner's grant of the aforesaid easement and right-of-way, the Township covenants and agrees to allow Owner to retain a contractor to remove any and all trees of value within the Township's right-of-way under the following parameters:

\* \* \* \*

3. For any … construction or any actions by the Township [after initial construction of the sewer system], its successors and assigns employees and/or contractors on the permanent right-of-way which may damage any trees, unless there is an emergency requiring immediate access, the Township covenants and agrees to provide Owner with six (6) [months'] notice of such construction or other actions to allow the Owner to retain a contractor to remove any and all trees of value within the Township's right-of-way. In the event of a non-emergency, if the Township fails to give such notice, then the Township covenants and agrees to pay the Owner the fair market value difference between the value of the said trees harvested by a contractor while still standing and in their condition at the time of entry into the right-of-way versus their value to a contractor after being cut down or otherwise damaged.

\* \* \* \*

B. In addition to any other compensation or covenants by the Township referenced in this Agreement, as part of the material consideration for Owner's grant of the aforesaid easement and right-of-way, Township covenants and agrees, with respect to any and all trees not covered under paragraph 4.A., to cut, or have its contractor cut, any other trees felled or damaged during any initial or future construction or other actions performed on the easement, into eight (8) foot lengths, unless Owner agrees to a longer length.

C. In addition to any other compensation or covenants by the Township referenced in this Agreement, as part of the material consideration for Owner's grant of the aforesaid easement and right-of-way, Township covenants and agrees to remove or have its contractor remove any brush, stumps, or other debris remaining after any construction, now or in the future, [within] a reasonable time period to not exceed six (6) months after completion of said construction, unless Owner agrees or desires to allow the said brush, stumps, or debris to remain on the property.

D. Township covenants and agrees that Owner retains, reserves and shall continue to enjoy the use of the surface of the aforesaid strip of land on which the easement applies for any and all purposes <u>which do not interfere with and prevent the use by Township of the within easement</u>, including the right to build and use the surface of the herein granted easement for roads or driveways (paved or unpaved), walks (paved or unpaved), gardens, lawns, fences, pastures, farm fields, planting, or parking areas (paved or unpaved). It is also agreed to by the parties that <u>trees will be permitted to grow naturally within the right-of-way provided that they do not interfere with the Township's use thereof in which case the provisions of Paragraphs 4.A., 4.B., and 4.C. apply</u>.

Agreement at ¶¶1, 2(A)(1), (2), (D), (F), 3(D), 4(A)(3), (B)-(D); R.R. at 12a-14a, 15a-17a (emphasis added).

Construing these provisions, the trial court enjoined Landowners from interfering with the rights granted to the Township under the Agreement and from taking any action that prohibited the Township from accessing the property for purposes of inspecting and maintaining its sewer lines. The trial court also declared that the easement and right-of-way allowed the Township to remove brush and overgrowth, including trees, as necessary to permit the Township to

23

access the property for the purposes set forth in the Agreement. By way of further clarification, the trial court stated, the area within the easement could be clear cut to the extent necessary consistent with customary industry practices in order to permit access by Township officials and equipment to perform reasonable inspection. The trial court also noted the Agreement expressly permitted the removal of any trees within the right-of-way for the purposes of exercise of the rights granted by the Agreement. Based on our review of the above-quoted provisions of the Agreement, no error is apparent in the trial court's interpretation.

To that end, pursuant to the express language of the Agreement, the Township has the right to access Landowners' property in order to inspect and maintain its sewer lines. Agreement at ¶2(D); R.R. at 13a-14a. Additionally, the Agreement clearly contemplates that the Township's right of access may entail the clearing of vegetation and trees within the right-of-way in order to inspect and maintain the sewer lines. Agreement at ¶¶2(F), 3(D), 4(A), (B)-(D); R.R. at 14a-17a. Thus, the Agreement grants Landowners the right to use the land above the easement for any and all purposes *which do not interfere with and prevent the use by Township of the easement*. Agreement at ¶4(D); R.R. at 17a. The parties also specifically agreed that trees would be permitted to grow naturally within the right-of-way *provided that they do not interfere with the Township's use of the right-of-way*. Agreement at ¶4(D); R.R. at 17a.

In addition, because the Agreement does not limit the Township's right to remove brush and overgrowth in order to access its sewer lines, and sets forth no restriction on the Township's method of inspection, it is appropriate to

consider whether the Township's proffered use is within the intent of the parties to the grant and "reasonable and necessary" to the purpose of the grant. <u>Zettlemoyer</u>. Clearly, the removal of brush and overgrowth in order to allow the Township to access its sewer lines for purposes of inspection and maintenance is reasonable and necessary to the purpose of the grant and within the intent of the parties to the grant. To that end, the purpose of the easement is to allow for, among other things, the inspection and maintenance of Township sewer lines; thus, removal of brush and overgrowth in order to allow access is reasonably necessary to enjoyment of the sewer line easement. As such, construing the terms of the easement in favor of the Township as grantee, <u>Amerikohl Mining</u>, no error is apparent in the trial court's order interpreting the Agreement to allow the Township to remove brush and overgrowth, including trees, as is necessary to permit the Township access for the purposes set forth in the Agreement.

### d. Landowners' Remedies

Of further import, Landowners are not without recourse for injury or damage to property, including trees, caused by the Township in its performance of work within the right-of-way. The Agreement expressly provides Landowners remedies *both before and after* the Township performs work in the right-of-way.

In particular, as to Landowners' remedy *prior* to the Township's performance of work within the right-of-way, the Agreement states,

> [f]or any future construction <u>or any actions by the Township</u> <u>[after initial construction of the sewer system]</u>, its successors and assigns employees and/or contractors on the permanent right-of-way <u>which may damage any trees, unless there is an</u> <u>emergency requiring immediate access, the Township</u>

25

> covenants and agrees to provide [Landowners] with six (6) [months'] notice of such construction or other actions to allow the Owner to retain a contractor to remove any and all trees of value within the Township's right-of-way. In the event of a non-emergency, if the Township fails to give such notice, then the Township covenants and agrees to pay the Owner the fair market value difference between the value of the said trees harvested by a contractor while still standing and in their condition at the time of entry into the right-of-way versus their value to a contractor after being cut down or otherwise damaged.

Agreement at ¶4(A)(3); R.R. at 16a (emphasis added).

Thus, the Township must provide Landowners six months' notice prior to its performance of work within the right-of-way, which it did here. R.R. at 22a. This six-month period affords Landowners an opportunity to examine their options with regard to the existence of trees within the right-of-way that may interfere with the Township's performance of work *prior to* the Township performing any work. This includes Landowners' ability to retain an expert to evaluate what measures are necessary regarding tree removal, to preserve evidence by video or photograph, or to harvest any trees of value within the right-of-way. Should the opinions of Landowners' expert differ from those of the Township, there is no preclusion to Landowners seeking declaratory or injunctive relief before work takes place.

In addition, Landowners have a remedy *after* the Township performs work within the right-of-way. The Agreement does not require the Township to replace or restore trees "in the wooded portions of [Landowners'] property within the permanent right-of-way;" however, as to other conditions of the right-of-way

26

or nearby, the Agreement states, "for any destroyed or damaged property or other loss which cannot or is not replaced or restored to the same condition to the extent reasonably possible under the circumstances and consistent with the rights and privileges herein granted, [the Township will] pay reasonable compensation therefore." Agreement at ¶2(F); R.R. at 14a (emphasis added). Also,

> [w]ith respect to any damages or loss caused by the Township and/or [its], servants, contractors, and /or employees to lands or property outside of the right-of-way granted herein, [Landowners] [do] not waive any rights under applicable law, and the Township agrees to provide [Landowners] with the right to reasonable restoration or compensation to non-easement damages as is provided for damages within the easement as is set forth in Paragraph 2.F. above.

Agreement at ¶3(A); R.R. at 15a (emphasis added).

Thus, in addition to other common law remedies, the Agreement expressly grants Landowners the right to reasonable compensation for any destroyed or damaged property or other loss within the right-of-way that cannot be replaced or restored to the same condition to the extent reasonably possible under the circumstances (as well as reasonable compensation for damage to property outside of the right-of-way).

In short, the Agreement expressly provides Landowners with remedies for damage to property, including trees, caused by the Township *both before and after* the Township performs its work.

27

## B. Alleged Factual Disputes
### 1. Contentions

Landowners next assert the trial court erred in granting summary judgment because genuine issues of material fact exist as to: (1) whether the Agreement permits the Township to perform routine mowing in the right-of-way; or, (2) whether clear cutting of the right-of-way for a video inspection minimizes damages in accordance with paragraph 2(F) of the Agreement. Landowners argue allowing routine mowing would nullify provisions of the Agreement that provide for natural growth of trees. They maintain a genuine issue of material fact also exists as to whether clear cutting of the right-of-way to perform a video inspection is a method that minimizes damages where: (1) all prior inspections in the Township showed no evidence of tree roots in the sewer system; (2) the known causes of water intrusion in other Township sewer lines are not present on Landowners' property; and, (3) a less intrusive flow meter system would show what specific sections of the sewer lines, if any, have water intrusion and need further inspection.

### 2. Analysis

Contrary to Landowners' assertions, genuine issues of material fact do not exist regarding the Township's right to perform routine mowing and video inspection. Rather, as explained above, in its suit here, the Township sought an order: enjoining Landowners from interfering with the Township's exercise of its property rights under the Agreement; prohibiting Landowners from denying the Township access to the property for the purposes of inspecting and maintaining its sewer lines; and, declaring that the Agreement permits the Township to clear brush and overgrowth, including trees, in accordance with the terms of the Agreement.

28

In turn, the trial court issued an order: permanently enjoining Landowners from interfering with the exercise of the property rights authorized to the Township by the Agreement; enjoining Landowners from taking any action that prohibits the Township access to the property for purposes of inspecting and maintaining its sewer lines within the easement; and declaring that the Township was permitted to remove brush and overgrowth including trees as necessary to permit the Township access for the purposes set forth in the Agreement. As set forth above, the trial court's resolution of this issue centered on its interpretation of the Agreement, and the trial court properly construed the terms of the Agreement in granting the relief sought by the Township. Thus, as the trial court explained:

> [Landowners] argue that there is a genuine issue of material fact as to whether 'routine mowing' is permitted under the [Agreement] and whether 'video inspection' of the sewage line minimizes damages in accordance with the parties' agreement. Regardless of how [Landowners] paint this issue, <u>the issue before the Court is one of contract interpretation and does not involve development of extensive factual background</u>. More specifically, whether routine mowing is permitted under the [Agreement] does not involve a factual question as to the meaning of 'routine mowing' but rather requires an interpretation of whether the [Agreement] permits [the Township] the right to perform routine mowing. Similarly, there is not great factual dispute as to whether 'video inspection' is less intrusive or feasible than other methods of line inspection. <u>Rather, the issue centers upon whether a right to inspect exists, and, if so, whether that right is limited by the terms of the agreement. The latter concerns are clearly issues of contract interpretation and do not create a factual dispute</u>.

Tr. Ct., Slip Op., at 3-4 (emphasis added). We discern no error in the trial court's reasoning.

29

Consequently, although Landowners argue issues of material fact exist regarding the Township's right to perform routine mowing and conduct a video inspection of its sewer lines, as the trial court observed, the central issue here is the proper construction of the Agreement, which is a question of law. Amerikohl Mining. Where the grant of an easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted. Zettlemoyer; Amerikohl Mining. Also, where the terms of an express grant of an easement are general, the easement is to be construed in favor of the grantee, and it may be used in any manner that is reasonable. Columbia Gas Transmission. Applying these principles, the trial court here properly interpreted the Agreement so as to grant the Township the right to access and inspect and maintain its sewer lines free from the limitations that Landowners now seek to impose where the express language of the Agreement does not contain the limitations now posited by Landowners.

## C. Grant of Injunctive Relief
### 1. Contentions

Landowners also contend the trial court erred by granting broad declaratory and injunctive relief by way of summary judgment as to whatever future actions the Township chooses to take on Landowners' property. In this regard, Landowners argue, the trial court's broad injunction goes beyond the actual controversies at issue in this declaratory judgment suit, routine mowing and video inspection. They assert there are also genuine issues of material fact as to whether the Township established the prerequisites for an injunction. Landowners contend the Township's complaint and request for injunction was based on a claim that Landowners prevented the Township from exercising its rights by building a

30

pasture fence and sending a letter indicating Landowners would pursue legal action if the Township proceeded with a course of conduct that violated the Agreement. However, Landowners assert, pasture fences are expressly permitted under the Agreement, and sending a letter indicating Landowners would pursue legal action if the Township proceeded with a course of conduct that violated the Agreement did not constitute a violation of the Agreement.

Landowners further maintain the Township did not satisfy the prerequisites for the grant of injunctive relief. More particularly, they argue there was not a showing of immediate and irreparable harm, or that greater injury would result by not granting an injunction. An injunction was also not necessary to restore the parties to the status quo as Landowners did not breach the Agreement and committed no manifest wrong. Landowners argue the Township also failed to comply with all of its duties and covenants under the Agreement in order to show it was entitled to injunctive relief and, therefore, the Township's right to injunctive relief was not clear. For these reasons, they assert, genuine issues of material fact exist as to whether the Township showed a clear right to an injunction.

## 2. Analysis

As explained above, this case centers on an interpretation of the Agreement, which presents a question of law, see Amerikohl Mining, rather than a dispute of material fact.

31

In addition, while Landowners address the elements required to obtain preliminary injunctive relief,[5] the trial court here "permanently enjoined [Landowners] from interfering with the exercise of the property rights authorized to [the Township] by the [Agreement][.]" Tr. Ct. Order at 1 (emphasis added). Additionally, the trial court "enjoined [Landowners] from taking any action which prohibits [the Township] access to the property for purposes of inspecting and maintaining sewage lines within the easement[.]" Id. Thus, the trial court granted permanent injunctive relief in favor of the Township.

In order to establish a claim for a permanent injunction, a party must establish its clear right to relief. Buffalo Twp. v. Jones, 813 A.2d 659 (Pa. 2002). However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court "may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." Id. at 663. A party must also show greater injury will result from refusing rather than granting the relief requested. Unified Sportsmen of Pa. v. Pa. Game Comm'n, 950 A.2d 1120 (Pa. Cmwlth. 2008).

An injunction is appropriate to restrain interference with an easement. Big Bass Lake Cmty. Ass'n v. Warren, 950 A.2d 1137 (Pa. Cmwlth. 2008).

---

[5] Thus, to obtain a preliminary injunction, a petitioner must establish: (1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the public interest will not be harmed if the injunction is granted. Brayman Constr. Corp. v. Dep't of Transp., 13 A.3d 925 (Pa. 2011).

Here, as set forth above, the Agreement clearly grants the Township a right of access to the easement to inspect and maintain its sanitary sewer lines. The right to gain access in order to inspect and maintain the sanitary sewer lines, functions which the Township is legally obligated to perform consistent with its National Pollutant Discharge Elimination System (NPDES) permit issued by DEP, is necessary to prevent a legal wrong for which there is no adequate redress at law. To that end, the Township's ability to exercise its contractual right to access the right-of-way in order to inspect its sewer lines is critical in light of the fact that the Township can only discover an issue with the sewer lines (such as an obstruction or crack in the sewer lines) through inspection. For the protection of the community, it is highly preferable for the Township to do so *before* such an issue arises. Further, greater injury would result from refusing rather than granting an injunction that prevents Landowners from interfering with the Township's exercise of its rights under the Agreement and enjoins Landowners from taking actions that prohibit the Township from accessing the property in order to inspect and maintain its sanitary sewer lines within the easement, obligations which the Township is legally obligated to perform.

In addition, as the trial court explained:

> [Landowners] also claim the injunction was not narrowly tailored to protect against the harm alleged. This claim mischaracterizes both the issue before the Court and the nature of the relief granted. [The Township's] [c]omplaint sought to enforce [its] clearly defined rights under the [Agreement] and enjoin [Landowners] from interfering with the same. The Court's Order enjoined [Landowners] from interfering with the exercise of [the Township's] rights under the [Agreement] which includes [the Township's] right to enter the property for purposes of inspecting and maintaining sewage lines within the

33

easement. This Court is at a loss to understand [Landowners']
exact complaint as it relates to this issue as this Court's Order
declared the terms of the [Agreement] to be enforceable and
enjoined [Landowners] from interfering with the same. …

Tr. Ct., Slip Op., at 4 (footnote omitted). No error is apparent in this regard.

To that end, the trial court's grant of injunctive relief here simply prohibits Landowners from interfering with the Township's rights under the Agreement and restrains Landowners from taking any actions that prohibit the Township from accessing the easement in order to inspect and maintain its sewer lines. Thus, contrary to Landowners' assertions, the trial court did not grant broad injunctive relief as to whatever future actions the Township chooses to take on Landowners' property.

### D. Alleged Reformation of the Agreement
### 1. Contentions

In addition, Landowners argue, the trial court erred in that its order reformed the Agreement to allow clear cutting based on industry standards. Prior to this reformation, Landowners contend the Township could not destroy any trees unless it first showed such trees interfered with a permitted use as set forth in paragraph 4(D) of the Agreement, and second, showed it chose a method that minimized damages to trees and other property as set forth in paragraph 2(F) of the Agreement. Landowners further maintain that, contrary to the trial court's statement, its reference to "customary industry standards" did not give the parties guidance so as to avoid future unnecessary litigation. They also assert the trial court also effectively reformed the Agreement to limit Landowners' remedy to a suit for monetary damages after violations by the Township already occurred.

34

## 2. Analysis

Contrary to Landowners' assertions, the trial court did not reform paragraphs 2(F) and 4(D) of the Agreement with regard to the language in its order which references "customary industry practices." Tr. Ct. Order at 1. Instead, as the trial court stated,"[b]y way of … clarification … the area within the easement may be clear cut to the extent necessary consistent with customary industry practices in order to permit access by Township officials and equipment to perform reasonable inspection[.]" Id. As such, the trial court did not add or alter language in the Agreement, but rather "to provide general guidance," the trial court indicated the language of the Agreement "would be interpreted under customary understanding in the industry." Tr. Ct., Slip Op., at 4.

Further, although the phrase "customary industry practices" does not appear in the Agreement, as explained above, where the terms of an express easement are general, the easement is to be construed in favor of the grantee, and the easement may be used in any manner that is reasonable and necessary in relation to its purpose. Columbia Gas Transmission. Similarly, where the grant of an easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted. Zettlemoyer. Applying these principles here, no error is apparent in the trial court's suggestion of a standard to aid in the Township's exercise of its right to obtain access for the purposes of inspecting and maintaining its sewer line.

Moreover, unlike the subjective standard proffered by Landowners, which would require the Township to obtain access and perform work in the right-of-way in a manner that is satisfactory to Landowners (a standard that does not

35

appear in the Agreement), the express language of the Agreement contemplates an objective, "reasonableness" standard. In particular, paragraph 2(F), states, in relevant part:

> the Township will at all times … cause every <u>reasonable</u> means to be used to protect from injury or damage all property, including … trees … and will at all times after doing any work … cause the said premises to be restored to the condition in which the same were found before such work was undertaken … to the extent <u>reasonably</u> possible under the circumstances and consistent with the rights and privileges herein granted, and for any destroyed or damaged property or other loss which cannot or is not replaced or restored to the same condition to the extent <u>reasonably</u> possible under the circumstances and consistent with the rights and privileges herein granted, pay reasonable compensation therefore.

Paragraph 2(F) of the Agreement; R.R. at 14a (emphasis added). The Agreement also permits trees to grow naturally within the right-of-way provided they do not interfere with the Township's use of the right-of-way, in which case paragraphs 4(A)-(C) apply (requiring, among other things, that the Township provide Landowners six-months' notice before undertaking work that may damage trees). The trial court's order did not reform these objective standards simply by "clarify[ying] [that] the area within the easement may be clear cut to the extent necessary consistent with customary industry practices in order to permit access by Township officials and equipment to perform reasonable inspection[.]" Tr. Ct. Order at 1.

> Indeed, as the trial court explained:

> [Landowners] claim that the Court's Order effectively changed or nullified material terms of the [Agreement]. Once again, this claim is based upon a distorted interpretation of the Court's

36

Order. After reviewing the [Agreement], the Court interpreted the [A]greement to grant [the Township] access to the property for the purpose of inspecting and maintaining sewage lines within the easement. The [A]greement was further interpreted to permit the [the Township] to remove brush and overgrowth including trees as necessary for [the Township] to exercise [its] access for purpose of inspection and maintenance. These rights are clearly granted to the Township in the [Agreement]. *See* paragraph 2[(D)] and 2[(F)]. In order to give the parties some guidance so as to avoid unnecessary future litigation, the Order explained that customary industry practices would aid in determining whether 'reasonable means' were utilized by the Township in exercising their rights under the agreement. Contrary to [Landowners'] claim, the Court Order did not reform or add terms to the agreement.

Id. at 5-6.

In addition, the trial court did not limit Landowners to the sole remedy of seeking monetary damages in the event the Township exceeded its rights under the Agreement. Instead, the trial court stated: "If the [Township's] actions exceed rights set forth in the [Agreement], [Landowners] may pursue actions for monetary damages." Tr. Ct. Order at 2. Thus, as the trial court explained, "contrary to [Landowners'] claims, the Order did not limit [Landowners] to a single remedy of seeking monetary damages in the event of the Township exceeding its rights under the [A]greement. To the contrary, a reading of the Order as a whole indicates an acknowledgment that [Landowners] have the ability to seek monetary damages for injury caused by [the Township's] actions should such injury contrary to the [A]greement ever occur." Tr. Ct., Slip Op., at 6 (emphasis added). As discussed above, the express language of the Agreement contemplates monetary compensation in the event the Township causes damage to Landowners' property while exercising its rights to use the easement. Agreement at ¶2(F); R.R. at 14a;

37

<u>see</u> <u>also</u> Agreement at ¶3(A); R.R. at 14a-15a (Township agrees to provide Landowners the right to "reasonable restoration or compensation" for damages outside of the easement as provided for in paragraph 2(F)). Further, as also discussed above, the Agreement expressly provides Landowners a remedy *prior to* the Township performing work in the right-of-way. <u>See</u> Agreement at ¶4(A)(3); R.R. at 16a.

## IV. Conclusion

For all the foregoing reasons, we affirm the trial court's order.[6]

_____
ROBERT SIMPSON, Judge

---

[6] Landowners also contend the trial court erred in denying their request for a jury trial. Based on our affirmance of the trial court's order granting summary judgment, it is not necessary to address this issue.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Berwick Township                        :
                                         :
            v.                           :    No. 461 C.D. 2016
                                         :
Robert F. O'Brien, Linda A. O'Brien,     :
Robert F. O'Brien, Jr., and Lydia A.     :
O'Brien,                                 :
                      Appellants         :

# **O R D E R**

**AND NOW**, this 12th day of October, 2016, the order of the Court of Common Pleas of Adams County is **AFFIRMED**.


                              _____
                              ROBERT SIMPSON, Judge