500 A.2d 1230

**GATEWAY MOTELS, INC., a Pennsylvania Corporation, Appellee,**

v.

**DUQUESNE LIGHT COMPANY, a Pennsylvania Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1985.

Filed Nov. 29, 1985.

620

John M. Cramer, Pittsburgh, for appellant.
Anthony J. Martin, Monroeville, for appellee.

Before OLSZEWSKI, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

Defendant-Appellant Duquesne Light Company appeals from a judgment entered in the lower court, in an equity case, which ordered Defendant to relocate its electrical transmission system, at its own expense, on property owned by the Plaintiff-Appellee. After careful review of the record, we are constrained to reverse the decision of the lower court.

The facts have been stipulated by the parties and are not in dispute. On September 9, 1954, Defendant, Duquesne Light Company (hereinafter referred to as "Duquesne") obtained a right-of-way over land owned by Gabriel and Marion Monzo, husband and wife, in order to install an overhead electrical transmission system, including line and supporting poles. The easement was created by an express grant and the easement agreement was duly recorded. The land over which the easement was granted was in an unimproved condition, and the majority of the land surface, at that time, was at a substantially lower elevation than the public thoroughfares which formed the western, eastern, and northern borders of the property. Of particular significance in this dispute, the easement agreement provided, inter alia:

> In the event the said Grantors [Monzos] should change the present grade of the land where the poles supporting said transmission system are erected by filling around said poles, the said Grantee [Duquesne], at its expense, shall raise said poles as many times as may, in the judgment of said Grantee, be necessary to provide adequate clearance for the operation of said transmission system.

In the years following the creation of the easement, changes were made in the surface of the subject property by a land-filling operation designed to raise the elevation of the land. From time to time, Duquesne raised its poles

pursuant to the agreement. On August 12, 1971, Plaintiff-Appellee Gateway Motel, Inc. acquired the property formerly owned by Gabriel and Marion Monzo, which was subject to the easement agreement with Duquesne. On or about May 2, 1977, Gateway demanded that Duquesne either relocate above ground or place underground the transmission line, with all expense to be borne by Duquesne. Duquesne refused to comply with Gateway's request.

On May 4, 1977, Gateway filed a Complaint in Equity in this case seeking a determination that the above-mentioned paragraph of the easement agreement required Duquesne to relocate its power lines at Gateway's request. The Chancellor entered an Adjudication and Decree Nisi, on October 13, 1984, in which he held that the easement agreement required the relocation of the transmission lines and that said relocation was to be at the expense of Duquesne. Timely exceptions were filed by Duquesne on October 24, 1983. On February 21, 1985, the lower court entered an Opinion dismissing these exceptions. Final judgment was entered thereafter on March 19, 1985, and this appeal followed.

In reaching its conclusion, the lower court reasoned that: (1) the easement was not restricted to a particular corridor on the site; (2) both parties to the easement agreement knew that the land was subject to future development; (3) the same parties contemplated that the transmission lines would need to be relocated periodically; and (4) the parties agreed that the expense of such relocation was to be borne by Duquesne Light Company. The court also considered the cost of easement to the Appellant, which the court decided was low. Finally, the lower court explained that because Duquesne drafted the agreement, it had to be construed against Duquesne.

■ We must disagree with the lower court, as the clear and unambiguous wording of the easement agreement is not susceptible to the construction which the court adopted. Initially, we must note that the easement contract does set forth an agreed location for the transmission system, as follows:

The said easement and right of way across the land hereinbefore described shall extend from said land of The Allegheny Drive In Theatre Company on the West to Haymaker Road on the East; the center line of the transmission system to be erected thereon to be located substantially as indicated by the red line on print of Duquesne Light Company drawing No. LL–4930 attached hereto and made a part hereof.

The drawing appended to the agreement contains a specific line marking the system's location referred to in the above-quoted paragraph. While the language does indicate the parties agreed to some small leeway in location, in the use of the words "to be located substantially as indicated", it may not reasonably be held that the easement was not restricted to a particular corridor on the site.

■ Although it could be concluded that the parties may have contemplated that the land was subject to future change, the only relocation suggested in the clear language of the agreement is that the supporting poles could be raised by Duquesne, as necessary, to provide for adequate clearance in the event that the easement grantors changed the grade of the land. There is no other language in the agreement that touches upon the subject of a possible movement of the transmission line. In particular, there is certainly no mention of any intent or contemplation by the parties that the system be moved underground or that it be relocated to any place on the property other than the area specifically delineated on the drawing which was made a part of the agreement.

There is a specific undertaking by the Appellant, in the contract, to stand the expense of elevating the poles if necessitated by changes in the grade of the land. However, there is no basis in the language of the document for one to find that the Appellant agreed therein to pay for any other relocation of the transmission system.

■ Finally, we note that the relative cost of the easement to Duquesne can have no bearing in the construction

of the unambiguous language of the contract arrived at between the Appellant and the grantors of the easement. Presumably, both parties to the easement understanding were satisfied with the consideration given when the agreement was made. There is no evidence to suggest a lack of fair dealing by the Appellant when the agreement was reached. Our courts cannot reformulate such agreements, which are otherwise clear, merely because of a change in the value of the land over many years.

■ In order to ascertain the nature of an easement created by an express grant, the intention of the parties must be determined, if possible, from the language of the instrument of conveyance. *Merrill v. Manufacturers Light and Heat Company*, 404 Pa. 68, 185 A.2d 573 (1962). We conclude that the language employed in the agreement under consideration in the instant case may not be construed to require the Appellant to relocate the transmission lines in issue, at its own expense, at the demand of the Appellee. The Appellee's request for relief should have been denied.

The Judgment of the lower court is reversed. Jurisdiction is not retained.