J-S45002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GECO HOLDINGS, LTD. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WEST PENN POWER COMPANY | : | No. 795 MDA 2025 |
| | : | |

Appeal from the Order Entered May 15, 2025
In the Court of Common Pleas of Franklin County
Civil Division at No: 2021-3859

BEFORE:   STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY STABILE, J.:            **FILED: MAY 27, 2026**

Appellant, GECO Holdings, Ltd. (hereinafter "GECO" or "Appellant"), appeals from the May 15, 2025, order of the 39th Judicial District, Franklin County branch, granting in part the summary judgment motion of Appellee, West Penn Power Company ("West Penn").  We affirm.

At issue is the cost of relocation of several West Penn utility poles located on GECO's property along Grant Shook Road, Franklin County (the "GECO Property") and the property of Accent Developers, LLC ("Accent") located in Washington Township, Franklin County (the "Accent Property").[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  Accent's appeal is pending at 1085 MDA 2025.  GECO and Accent are represented by the same lawyer, and they raise identical issues on appeal. *(Footnote Continued Next Page)*

The trial court recited the pertinent facts, none of which are in dispute:

> The GECO and Accent Properties are encumbered by nearly identical, standardized, rights-of-way held by [West Penn] ("the Agreement"). West Penn acquired the right-of-way from its predecessor, South Penn Power. The Agreement was granted 'for the purpose of constructing, operating, and maintaining an electric line, including all necessary poles, anchors, wires, and fixtures, over and along the property ….' According to the Agreement,

>> The Company [West Penn] will relocate the poles when necessary to conform to future building operations of the undersigned, and will pay for all damages to fences, crops, and livestock caused by the operation, maintenance, rebuilding and removal of said lines, if notice in writing is given within thirty days after such damages are suffered, otherwise it is understood that such damages are waived.

> GECO is in the process of building a shale pit on the GECO Property. Accent built a model residential building on the Accent Property in 2018. The current location of the utility poles on the GECO Property does not conform to the future building operations of GECO. The previous location of the utility poles on the Accent Property did not conform to the building operations of Accent. [GECO and Accent] asked West Penn to relocate the utility poles on their respective Properties. Neither [GECO nor Accent] receives electric utility services from the poles and utility lines currently located on their Properties. The utility poles located on the Accent Property have already been relocated. Accent advanced $1,788.35 to West Penn, which was the cost to relocate the poles, with the mutual understanding that Accent would be reimbursed if Accent prevails on the issue of who bears the cost of relocation.

Trial Court Opinion, 5/15/25, at 3-4 (record citations omitted).

---

Thus, our analysis of both appeals will be substantially identical. The cases were tried together, but this Court declined to permit consolidated appeals because the appeals involve different parties and because GECO and Accent asserted different causes of action in their complaints.

GECO (hereinafter "Appellant") filed a seven-count civil complaint against West Penn on December 8, 2021. Accent filed a complaint the same day, and the actions were consolidated for disposition after pleadings closed. Appellant and Accent filed summary judgment motions on March 5, 2025. West Penn filed a competing summary judgment motion against both parties on March 6, 2025. In the order on appeal, the trial court denied Appellant's summary judgment motion and granted West Penn's summary judgment motion on six of the seven counts asserted in Appellant's complaint. The trial court denied summary judgment to West Penn on Appellant's count for misappropriation of property because West Penn did not address that cause of action in its motion. Because Appellant has since abandoned its misappropriation cause of action, all claims are disposed of and this matter is ripe for appeal.

Appellant presents three questions:

1. Does the right-of-way agreement impose upon West Penn a conditional duty to relocate the utility poles, and if so, has that condition precedent been fulfilled so as to require West Penn to relocate the utility poles?

2. Does the right-of-way agreement contain a second condition precedent to excuse West Penn from performing its duty to relocate the utility poles, that second condition precedent being the property owner's payment of West Penn's relocation costs?

3. While the property owners asserts the right-of-way agreement clearly imposes a duty upon West Penn to relocate the utility poles once the condition precedent of interference is fulfilled, as the parties' stipulation proves, nevertheless, should the court find any uncertain or ambiguous terms with respect to

the question of allocation of utility pole relocation costs, may those costs appropriately be imposed on the property owner?

Appellant's Brief at 9-10.

Upon review of Appellant's brief, it is clear that Appellant's three questions boil down to one: which party bore responsibility, under the Agreement, for the cost of relocating the utility poles? The Agreement, quoted above in the trial court's opinion, provided that West Penn would relocate any utility poles when necessary to conform to Appellant's building operations. The parties have stipulated that relocation of the poles was necessary. The Agreement is silent on which party bears the expense of relocation.

Before we address the merits of Appellant's arguments, we consider West Penn's argument that a decision rendered by the Pennsylvania Public Utilities Commission ("PUC") constitutes *res judicata* and/or collateral estoppel on the question before us.[2] The parties to this litigation first took their dispute to the PUC, and the PUC ruled that West Penn's tariff provides that its customers must pay for the relocation of West Penn's facilities, such as utility poles, before West Penn is required to do any work. In other words, the PUC

---

[2] "[R]es judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication." **Appeal of Coatesville Area Sch. Dist.**, 244 A.3d 373, 378 (Pa. 2021). "Collateral estoppel is similar in that it bars re-litigation of an issue that was decided in a prior action, although it does not require that the claim as such be the same." **Id.** at 379.

interpreted the tariff applicable to West Penn. Public utility tariffs operate as follows:

> A tariff is a set of operating rules imposed by the State that a public utility must follow if it wishes to provide services to customers. It is a public document which sets forth the schedule of rates and services and rules, regulations and practices regarding those services. It is well settled that public utility tariffs must be applied consistently with their language. Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility.

> Public utility tariffs are used in governing the services public utilities provide to their customers. In this instance, relocation was not based upon providing electrical service to a customer. Rather, it was based upon the clearly defined terms of the written agreement that reserved [Appellee's] right to mine under an easement granted to Appellant.

*Pennsylvania Elec. Co. v. Berwind Corp.*, 2015 Pa. Super. Unpub. LEXIS 1139, *22 (Pa. Super. April 28, 2015) (citations omitted; quoting *PPL Elec. Util. Corp. v. Pennsylvania Pub. Util. Comm'n*, 912 A.2d 386, 402 (Pa. Cmwlth. 2006)).

We conclude that the PUC's decision is inapposite. As is evident from this Court's memorandum in *Berwind*, and as the trial court noted in rejecting West Penn's argument, West Penn's tariff governs West Penn and its **customers**. Appellant is not a customer of West Penn. Further, the PUC expressly stated that its decision had no bearing on the scope or validity of the Agreement. Trial Court Opinion, 5/15/25, at 4-5. For these reasons, we agree with the trial court's conclusion that the PUC's decision does not preclude any claim or issue presently before us.

Turning now to the merits, the order before us granted West Penn's motion for summary judgment. Summary judgment is appropriate when there is "no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery[.]" Pa.R.Civ.P. 1035.2(1).

> As has been oft declared by this Court, summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. On appellate review, then, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.
>
> To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

**Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010) (internal citations and quotation marks omitted).

Appellant's arguments require us to interpret the parties' right-of-way Agreement. Rights of way are subject to the same interpretive principles as any contract. **Berwick Twp. v. O'Brien**, 148 A.3d 872, 883 (Pa. Cmwlth. Ct. 2016). Thus, we are mindful of the following:

- 6 -

> In interpreting the terms of a contract, the cardinal rule followed by courts is to ascertain the intent of the contracting parties.  If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties.  If, however, the contractual terms are ambiguous, then resort to extrinsic evidence to ascertain their meaning is proper.  A contract's terms are considered ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

*Commonwealth v. UPMC*, 208 A.3d 898, 909-910 (Pa. 2019) (citations and quotation marks omitted).

As noted above, the operative provision in the Agreement states that West Penn "will relocate the poles when necessary to conform to future building operations of [Appellant], and will pay for all damages to fences, crops, and livestock on said right of way caused by the operation, maintenance, rebuilding and removal of said lines [...]"  Agreement.[3]  The Agreement is a single-page preprinted form with lines for handwritten terms. The operative language quoted above is preprinted.  The Agreement appears to have been signed on July 20, 1954.

The parties agree that relocation of West Penn's utility poles is necessary to conform to Appellant's building operations.  West Penn argued before the trial court that it was not required to bear the cost of relocation, despite its contractual obligation to move the poles.  West Penn argued that the Agreement specifies items, such as damages caused by the operation and

---

[3]  The Agreement appears in the certified record as Exhibit 2 to Appellant's December 8, 2021 complaint.

removal of its utility lines, for which West Penn would bear the cost. The exclusion from that list of the cost of relocation, West Penn argued, indicates that West Penn is not responsible. Appellant argues that the duty to relocate the utility poles necessarily carries with it the obligation to absorb the cost of relocation.

The trial court agreed with West Penn, finding the Agreement unambiguous in imposing the obligation of utility pole relocation, but not the cost of relocation, in West Penn. Trial Court Opinion, 5/15/25, at 8-9. That is, "[t]he parties unambiguously intended that only damages to fences, crops, and livestock would be paid for by West Penn with advanced notice." *Id.* at 9. The trial court rejected Appellant's argument that the duty to relocate the poles carries with it the duty to pay for relocation, reasoning that "we cannot imply a duty into the Agreement that is not there. If the parties intended for West Penn to pay relocation costs, the parties could have inserted that term in the Agreement. The parties did not, and the agreement is unambiguous, and silent as to who bears relocation costs." *Id.*

The trial court relied upon *Soderberg v. Weisel*, 687 A.2d 839 (Pa. Super. 1997), in which the plaintiffs owned land on which the defendants had established a prescriptive easement over plaintiffs' property for the ingress and egress of farm equipment. *Id.* at 841. Plaintiffs proposed moving the location of the easement for the safety of their young children, but defendants refused. *Id.* The trial court ordered the location of the easement to be moved,

and the cost of relocation to be split between the parties. *Id.* This Court affirmed in part and reversed in part, reasoning that relocating the easement would not interfere with the defendants' use thereof, but the cost of relocation should be borne entirely by the plaintiffs as the benefiting party. *Id.* at 845-46.

Likewise, the trial court relied on *Minard Run Oil Co. v. Pennzoil Co.*, 214 A.2d 234 (Pa. 1965), wherein the plaintiff sought to compel the defendant to sink a petroleum pipeline to a sufficient depth to permit the plaintiff to extend a road over the route of the pipeline easement without subjecting the pipeline to damage from surface traffic. The plaintiff's predecessor in interest had sold a pipeline easement to the defendant's predecessor in interest; the opinion does not mention any agreement governing relocation of the pipeline. Our Supreme Court permitted the plaintiff to compel the pipeline to be moved, but required the plaintiff to pay for it:

> [F]or the plaintiff to demand that the defendants pay for what is being done for its own benefit would be like asking the miller to pay the farmer for the flour he has produced from the farmer's wheat. The lowering of the defendants' pipeline can in no way increase the defendants' profits or facilitate the discharge of their function which is to transport oil in a pipe. The status quo was entirely satisfactory to them. They in no way sought a change in the existing conditions. It is the plaintiff who desires to alter the status quo for its benefit (even though, by deepening the bed of the defendants' pipeline it will be less subject to damage), and it should, therefore, be the plaintiff's obligation to pay for the achievement of its desire.
>
> […]

> The plaintiff's right to the full use of the surface was necessarily circumscribed by the easement granted in 1929, and the defendants have the right to insist that the easement remain as granted. However, since they have now accepted the decision of the lower court to a deeper subterranean placement of the pipeline, it is only just that the plaintiff, for whose direct benefit the translocation of the pipeline has been approved, pay for the costs involved in that relocation.

*Id.* at 336-37.

Given the reasoning and outcomes in **Soderberg** and **Minard**, the trial court concluded that, in the absence of an express agreement to the contrary, Appellant, as the party benefitting from relocation of the utility poles, should bear the cost of relocation.

Appellant relies on **Berwind**, in which the defendant coal miner and the plaintiff utility company had a right-of-way agreement for the plaintiff's power line. The agreement held the defendant harmless for any damages caused to the power line by the defendant's mining. **Berwind**, 2015 Pa. Super. Unpub. LEXIS, at *2-3.[4] Thirty years after the agreement was executed, the defendant notified the plaintiff of its intent to mine underneath the right of way. The plaintiff first sought to prevent the defendant from mining underneath the power lines but, when that failed, the plaintiff moved its power lines at its own expense and sought damages. **Id.** at *4-5. The trial court granted the defendant's motion for summary judgment.

---

[4] We observe that **Berwind**, filed in 2015, is not subject to Pa.R.A.P. 126, which permits citation, for persuasive authority, to unpublished opinions of this Court filed after May 1, 2019. Pa.R.A.P. 126(b).

This Court affirmed, reasoning that when the defendant notified the plaintiff of its intention to mine under the right-of-way, the plaintiff had to choose between running the risk of damage to its power lines, as per the terms of the parties' agreement, or moving its power lines. "While it is true that the right-of-way agreement is silent regarding relocation, to adopt Appellant's reasoning would fundamentally rewrite the agreement by holding Berwind liable for damages for exercising its rights as clearly delineated under the agreement." *Id.* at *17.

Appellant also relies on *Gateway Motels, Inc. v. Duquesne Light Co.*, 500 A.2d 1230 (Pa. Super. 1985). There, the defendant utility company was obligated by a right-of-way agreement to raise its utility poles, at its own expense, in the event that the plaintiff changed the grading of the land subject to the right-of-way. *Id.* at 1230-31. When the plaintiff demanded that the defendant relocate (not raise) its utility poles at its own expense, the defendant refused and litigation ensued. The trial court ordered the defendant to relocate the poles at its own expense. This Court reversed, reasoning that the agreement expressly governed elevating the poles but was silent as to their relocation. *Id.* at 1232.

In our view, *Berwind* and *Gateway* do not support Appellant's argument. In *Berwind*, which is not binding in any event, the utility was contractually obligated to hold the defendant harmless for damages to utility poles caused by the defendant's mining activity. The utility's attempt to

impose upon the defendant the cost of relocation of its poles was, in effect, an end run around the express contractual language imposing costs on it. The right-of-way agreement at issue in *Gateway* governed the raising of poles but was silent on pole relocation. The *Gateway* Court therefore **reversed** an order imposing on the utility the obligation to relocate poles at its own expense.

*Soderberg* supports the trial court's decision insofar as it provides authority for imposing the cost of relocation on the benefitting party, but *Soderberg* involved a prescriptive easement rather than a written right-of-way agreement. In our view, *Minard Run* most closely resembles the instant case. There, as here, the utility agreed to a relocation. We assume, as the *Minard Run* opinion does not state otherwise, that the document establishing the pipeline easement did not address relocation. The *Minard Run* Court therefore imposed the cost of relocation on the benefitting party.

Instantly, in the absence of language in the Agreement governing the cost of relocation of West Penn's utility poles, we find the *Minard Run* Court's analysis persuasive. The Supreme Court in that case ensured that both parties continued to enjoy full use of their respective rights; the utility to its pipeline easement and the other party to the surface rights. The party benefitting from the change in location of the pipeline bore the costs, in the absence of an express agreement to the contrary. This Court's decisions in *Soderberg*

and **_Gateway_** are consistent with the Supreme Court's rationale in **_Minard Run_**.

Nothing in the express terms of the Agreement warrants a different result. West Penn agreed to be responsible for specific costs, not including relocation of its utility poles. West Penn's refusal to pay for the relocation of its utility poles in this case does not constitute an end run around any of its express contractual obligations. West Penn does not dispute its contractual obligation to relocate its utility poles, an undertaking that is for the sole benefit of Appellant.

In summary, then, the trial court's decision is consistent with our precedent on this issue and consistent with the express terms of the Agreement. Because we discern no error in the trial court's decision, we affirm.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/27/2026